yet? I'm not. I'm having great fun this morning. It's usually the lawyers who are suffering in this dance. May it please the Court, my name is Robert Richman and I represent Jessica Reznicek. The District Court erred in imposing a 12-level terrorism enhancement because Ms. Reznicek's offenses were not calculated to influence or affect the conduct of government or to retaliate against government conduct. That enhancement increased Ms. Reznicek's guideline range from 37 to 46 months to 210 to 262 months. There's no question that Ms. Reznicek was unhappy with the decision of the Utility Board to allow the pipeline, but the damage to private property was calculated to stop the pipeline, not to punish the Board. It's not enough for the government or for the District Court to simply point out statements in which she criticizes the government. In order for the enhancement to apply, there that this was supposedly intended to affect or to retaliate against. Counsel, before you — this is a really interesting textual argument, but I have to ask about the possibility of harmless error here, where the — and this is, I think, Judge Ebinger, and she doesn't always do this, but she laid out all the 3550 — well, she always says the 3553 factors, but she doesn't always do a harmless error statement. And as I recall, she had a pretty clear statement that she would have given the same sentence regardless of the terrorism enhancement. So she wasn't sure about it, so she made sure to say, well, this is the sentence I think should govern. What do we do with that? Your Honor, the — in order for harmless error to apply, it must be clear in the record that the Court would have imposed the same sentence without the record. And notwithstanding that statement from the court — from the district court, I don't think that the Court can make that finding here. First of all, the law — I cite United States v. ICASA, which is 492 F. 3rd. 967. That's Eighth Circuit, 2007. In order for the harmless error standard to apply, the Court has to identify what the guideline range is and basically make sentencing findings as to that guideline range. In this case, the Court mentioned three separate guidelines, with the enhancement, without the enhancement, and with the enhancement, but in criminal history Category 2. It did not explain on what basis it would have varied upward to a sentence that would be more than twice the top of the applicable guideline range. The parties had no opportunity to argue against a downward variance in that situation. Obviously, there are harmless error situations where the two guideline ranges overlap and the Court imposes the sentence in the middle. I would urge the Court, however, not to find in a five-fold increase in the guideline range. You know, I understand that, because it is — there's just a huge difference between the guideline ranges that would be applicable. But this is a judge who basically, you know, acknowledged the existence of the problem. The arguments that were presented to her at that stage were cogently presented, well presented, forcefully argued. She obviously struggled with the whole series in her own mind. She laid out the different scenarios. And then she tells us, taking in consideration all of the 3553A factors, this is the sentence I would impose regardless of how I got to it under a guidelines calculation. And given the amount of the loss, total loss here, it's not patently on its face influenced by the terrorism. Another case that I would cite to the Court, Your Honor, this is a Second Circuit case, United States v. Ingram, which is 721F335, and specifically the concurring opinion by Judge Calabresi, who I took evidence from in law school. In that case, the Court noted that the guidelines have an anchoring effect, citing Kahneman, the Israeli behavioral economist. And I would suggest that what seems like a reasonable sentence when the guidelines are 210 to 262 months may not seem like a reasonable sentence when the guidelines are 37 to 46 months. I understand the Court's point that there was discussion of all of those different guideline ranges, but I think that notwithstanding the Court's comment, there is not a basis for finding harmless error here. In this case, the government's position boils down to that by the government's position, by generating public attention to the pipeline, that may over time cause, by generating public opinion, that may over time affect policy. I would suggest that's the way our democracy works. And the government's argument would suggest that every time there is a political protest that crosses the line into one of the enumerated offenses, that would trigger the terrorism enhancement. Well, what about so I'm not sure that's true, and I'll tell you why. So the first part of the guideline talks about calculated to influence or affect the conduct of government by intimidation or coercion. You only have to look at your client's statement and the fact that she made the announcement in front of the Iowa Board of Utilities to create a reasonable inference that she was trying to influence government action. Otherwise, why do you make the critical announcement right in front of a government agency? I mean, why is that not enough? I understand retaliation is much weaker, but at least for that first part of the guideline, why doesn't that do it? Because there was no conduct to affect. The decision had been made. There was no procedure for undoing the decision. Yes, she made her statement in front of the utility board because she was saying, we are unhappy with the decision that you made, and so we were required to take our own action because you would not. I would suggest that that sort of a statement is not calculated to affect the utility board. So it's not enough to say that they could have changed their mind, like change your mind, or alternatively, I'm out here protesting before the Board of Utilities because I want to make darn sure that the next time they're faced with this situation, they don't make the same decision they made before. Is that not enough? I think that it's speculative, Your Honor. That is certainly not what Ms. Resnicek said. Her statement to her statement in front of the board was addressed to the American people. It was not addressed to the board. It never asked the board to say anything, to do anything. So what's our standard of review of the district court's finding on intent? Well, I don't think that the facts here are in dispute, Your Honor. She said what she said, and she did what she did. I think this is a question of the application of the guideline, which I think, and so I think as to that, it's de novo review. That's a question of law. I think that the court misinterpreted the term calculated, and certainly misinterpreted the term retaliate. This idea that, well, here are places where she was critical of the board, and therefore, it was intended to affect the board, I don't think is a correct application of the terrorism enhancement. Unless there are other questions, I'll reserve the remainder of my time. You may. Thank you. Mr. Grias, when you're ready. May it please the court, counsel. The star of this show is clearly the defendant's own words, and I want to jump right to the idea that counsel made, that every time there's some sort of political protest, that this guideline section would apply. That's absolutely not the case, and this dovetails a bit with the harmless air question that Judge Strauss just asked. It has to do with the overall conduct. This was not lawful political protest. This was the commission of a crime, a very serious crime. And I disagree with the idea that the court didn't set forth why it arrived at the sentence and departed the way it did. A sentence of 96 months, by the way, is much closer to 37 than it is to 210 months. The court did explain quite clearly why this conduct was worthy of that sentence, and it is harmless given the court's statements, even if the court were to determine that this guideline section doesn't apply. It talked about the dangerousness of the conduct. This is, they were conspiring to damage an energy facility. This was not a singular action. This occurred over many months at many different locations in many different venues, both South Dakota, Minnesota, and northern and southern Iowa. The damage involved here was incredibly extensive. The restitution alone, which doesn't account for all the costs associated that the company had to endure, but just for the damage that was caused, was north of $3 million. This is extremely dangerous conduct. The parties here like to talk about it being nonviolent direct action. It's anything but nonviolent. They were applying fire to the construction equipment. They were using a settling torch to burn holes in a pipeline, not knowing for certain whether or not there was oil flowing through that pipeline. It's true that these sites were in rural parts of Iowa and rural parts of the states I mentioned, but this is in Alaska. There are small towns all over the place. And anything that resulted in any kind of damage was sure to bring first responders to the scene as it did. This is incredibly serious conduct that occurred over a span of time. The other thing that I think needs to be said is the defendants in this case weren't just doing this on their own. They had higher aspirations, which I'll get to in a second. But what they were trying to do is encourage and inspire, encourage other people to do the same thing. This goes to the second part of the argument having to do with the guidelines section, which specifically pertains to their reasoning. As the Court properly indicated, it has to be calculated. And first of all, the conduct here is clearly calculated. You can see from just by reading their public statement, their public confession, that they were absolutely calculating at every step that they took. It was designed to both influence and affect the conduct of government and to retaliate against government conduct. Let me explain a little bit more about that going directly to their words. They talk about having explored and exhausted all avenues of process. They're talking here about lawful First Amendment protests, including attending public hearings, gathering signatures for environmental impact statements, participating in civil disobedience, hunger strikes, marches and rallies, boycotts and encampments. We saw the clear deficiencies of government. They weren't talking about the private energy facility. They were talking about the decision that was made to allow this pipeline to proceed. And that is what they're retaliating against. They go on to say that the courts and public officials allowed these corporations to steal permissions from landowners and brutalize the land and that the system is broken. And this is an important point, that the system is broken. Because if you go a little bit later in the statement, they say this, you may not agree with our tactics, but you can clearly see the necessity of them in light of the broken federal government and the corporations they protect. Counsel, I got to say, I mean, yeah, you have these statements, but the retaliation against the government, now, if they had vandalized the Board of Utilities building or whatever, that'd be one thing. But I just think they're really going after the companies who have these pipelines, not so much, I mean, laying aside the influence, the retaliation seems to me to be a much weaker argument by the government here. I understand the Court's point on that. And I'm looking at more of a timeline. When they — at the point they make their public statement, the conspiracy is over with. And they're attacking the government for allowing the pipeline to proceed. Clearly, the target is also the private corporation. They want that pipeline to end. That's their whole point. But they're also attacking the government for allowing it to occur in the first place. And that also goes to what you're saying about influence or affecting the conduct of And this is the second part of what I was going to say here, drawing from their statements. They were trying to inspire others to act boldly, to ease any anxieties or perceptions that the State and these corporations, the State and these corporations are somehow omniscient or undefeatable or an undefeatable entity. In other words, they're looking to the future. They're trying to inspire other people to go out and do the same thing that they did and saying, look, you can accomplish this. You can get away with it. This is further highlighted by their speaking tour that they went on after making these public statements and when they went to various organizations in Minnesota and Iowa and spoke to like-minded people about encouraging them to go do the same thing. And that also factors into the Court's decision, I believe, and the reasonableness of this sentence. They were trying to influence government. They were trying to say to the government, if you do this kind of thing, we're going to go out there and take matters into our own hands, take the law into our own hands and end this pipeline one way or the other. And that is incredibly dangerous and exactly what this enhancement is designed to stop. This wasn't a situation, I do want, before I forget here, I do want to point out, they did vandalize the Iowa Utilities Board. Immediately after their statement was finished, they reached behind some bushes where they had stashed some crowbars and started tearing apart the Iowa Utilities Board sign. So that was part of what they were doing. It was symbolic, but it was symbolic of their entire plan, which was to attack both the corporations that were proceeding with the pipeline, but for the government for allowing it to happen and to tell the government, if you do this in the future, this is what's going to happen. I do want to make another point. I believe it was Judge Cobbs asked about the standard of review. The standard of review is de novo, but what I failed to mention in my brief, and I apologize, is that the factual findings of Judge Ebinger, I believe, are reviewed for clear error. And so they're certainly well supported in the record for the reasons that I've stated here today and the reasons that are in the record. The bottom line is this. This enhancement applies. It is very clear from the record and mostly from their own words that their target here was the government. It's true, absolutely, of course, that it was also the private energy company that was running this pipeline. But they mentioned the government just as much, if not more, as they do the government. I will cede the rest of my argument time. You may. Thank you. May I? You may, Mr. Richmond. I'm sorry. What the government just argued, and I tried to take it down verbatim, they wanted the pipeline to end. That was their whole point. Granted, while doing that, they criticized the government because they thought the government should have done it itself. But Ms. Resnicek targeted only private property. 3A1.4 makes clear that the guideline does not apply to the government. Ms. Tackersley, the two cases from the Ninth Circuit are directly on point. In this case, only private property was targeted. The fact that they thought that the government should have done it themselves does not mean that their offense was calculated to affect government conduct or to retaliate against the government. And therefore, we ask the Court to reverse the judgment and remand for resentencing. Thank you. Thank you. Thank you very much. The case is submitted.